

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 27, 2019**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CASE NO. 18-32770-BJH** |
| | § | **(Chapter 11)** |
| **TM VILLAGE, LTD.,** | § | |
| | § | **Related to ECF No. 27** |
| Debtor. | § | |

### MEMORANDUM OPINION GRANTING DEBTOR'S MOTION TO ASSUME

TM Village, Ltd. (the "**Debtor**") moved to assume prepetition sales contracts (the "**Contracts**") covering forty-three of fifty condominium units it owns. Its motion drew responses from: (1) the majority of counterparties to the Contracts, who refer to themselves as the "**Condo Owners**;"[1] (2) senior lienholders Tamamoi, LLC and FDRE, Inc. (together, "**Tamamoi**");[2] (3) Richard Yao, as successor of interest to Yaling Pei, Di Zhang and Young Chen ("**Yao**");[3] and (4)

---

[1] Motion to Assume Contracts Pursuant to 11 U.S.C. § 365 (the "**Motion to Assume**"), ECF No. 41.

[2] ECF No. 56.

[3] ECF No. 64.

second lienholder SKR Partners, LLC ("**SKR**").[4] After an evidentiary hearing the court requested additional briefing and later took the motion under advisement. This Memorandum Opinion comprises the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable by Fed. R. Bankr. P. 9014(c).

## I.      Jurisdiction

The court has jurisdiction over the Motion to Assume under 28 U.S.C. § 1334(b); this is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## II.      Factual and Procedural History

### A.      The Debtor's Corporate Structure and Real Estate

The Debtor, a Texas limited partnership,[5] has a sister company, TMV Condo Office Park, Ltd. ("**TMV Condo**"), another Texas limited partnership. John Chong is the managing member of TMV GP, LLC, the general partner of both entities.[6]

The Debtor owns contiguous parcels of real estate: 1146 W. Trinity Mills Road, Carrollton, Texas ("**TM Village**") and 1220 W. Trinity Mills Road, Carrollton, Texas ("**TM Place**").[7] TM Village is raw land on which the Debtor planned to construct an apartment building.[8] TM Place

---

[4] ECF No. 65.

[5] The Debtor was initially formed on May 15, 2013 as a Texas corporation. Debtor's Ex. 1 (Certificate of Formation). Deb Benham, who manages the Debtor's books and records, testified that the Debtor's formation as a corporation was a mistake; and so it was converted to a limited partnership on October 16, 2014. Hr'g Tr. 11/26/18 [ECF 98] at 10:6-16 (Benham); Debtor's Ex. 3 (Certificate of Conversion). She explained why the Warranty Deeds covering the two parcels of real estate (Debtor's Exs. 4 and 5) erroneously identified the purchaser as "TM Village LTD, a Texas *Limited Liability Company*," when TMV Village LTD actually was a corporation at the time of the purchase. Ms. Benham credibly testified that the Debtor owned the two parcels of real estate at all times relevant to this Memorandum Opinion. Hr'g Tr. 11/26/18 [ECF No. 98] at 10:6-11:10, 12:18-13:10 (Benham).

[6] Debtor's Ex. 2 (Certificate of Formation); Hr'g Tr. 11/26/18 [ECF 98] at 5:5-16, 11:11-22 (Benham); Debtor's Ex. 76 (Certificate of Formation).

[7] Debtor's Exs. 4 (Warranty Deed, TM Village), 5 (Warranty Deed, TM Place); Hr'g Tr. 11/26/18 [ECF 98] at 10:17-24, 12:18-13:7 (Benham).

[8] Hr'g Tr. 11/26/18 [ECF No. 98] at 10:17-24 (Benham).

is the site of a single building divided into commercial office suites (the "**Office Suites**") and

residential condominiums (the "**Condominiums**").[9] So, as relevant here:



### B.    Construction of the TM Place Office Suites and Condominiums

The record reflects that the Debtor's record keeping was disorganized: indeed, Mr. Chong

often was unaware the specific entity that owned a given asset.  According to Ms. Benham,[10]

although the Debtor purchased both parcels of real estate, Mr. Chong intended that (1) TMV Condo

own the TM Place land (where the Office Suites and Condominiums were built), and (2) the Debtor

own the TM Village land (where the apartment building was to be built).  However, the Debtor

never transferred the TM Place land to TMV Condo.[11]

Mr. Chong and his entities, oblivious to the Debtor's failure to transfer the land, constructed

the building assuming that TMV Condo owned the property.[12]  As a result, TMV Condo, and *not*

---

[9]  *Id.* at 27:6-13 (Benham).

[10]  Ms. Benham handles most of the Debtor's day-to-day administrative functions.  *Id.* at 4:2-20 (Benham).  She has been employed by the Debtor since its formation.  *Id.* at 3:17-20 (Benham).

[11]  *Id.* at 5:23-6:22 (Benham).

[12]  *Id.* at 13:16-14:19 (Benham).

the Debtor, entered into the Contracts[13] that are the subject of the motion.  Mr. Chong was not the only inattentive player: Ms. Benham, whom Chong had tasked with administering the various projects, also did not realize the mistake until nearly all the Contracts had been signed.[14]  Chong had planned to correct the mistake at the closing of each Condominium sale, by having TMV Condo assign each Contract to the Debtor and then having the Debtor proceed to closing.[15]  He instead opted to make the assignment sooner given the prospect of the Debtor's bankruptcy filing.[16]  Thus, on August 3, 2018, TMV Condo and the Debtor executed an Assignment of Contract of Sale,[17] assigning the forty-three Contracts to the Debtor.  The Debtor filed chapter 11 on August 22, 2018, before it and the Condo Owners could close on the respective Condominium sales.

Assumption of the forty-three Contracts would yield approximately $550,000 in sale proceeds for the Debtor.[18]  After deducting unpaid real estate taxes, broker commissions, title insurance and other closing costs, the senior lienholders would receive about $183,000.[19]

## III.    Legal Analysis

The objections to the Motion to Assume are that:

(1) TMV Condo is the party to the Contracts and no evidence supports a finding that the Contracts were validly assigned to the Debtor;

---

[13] Although many of the Contracts list the seller as "TMV Office & Condo Park," Ms. Benham credibly testified that the seller was actually TMV Condo.  *Id.* at 23:2-24:18 (Benham).

[14] *Id.* at 21:23-22:13. (Benham).

[15] *Id.* at 22:14-23:1 (Benham).

[16] *Id.* at 26:8-27:13 (Benham); Debtor's Ex. 53 (Assignment of Contract of Sale).

[17] Debtor's Ex. 53 (Assignment of Contract of Sale).

[18] Hr'g Tr. 11/28/18 [ECF No. 99] at 24:1-27:17 (Chong).  The balances due from the Condo Owners at closing are relatively modest because most of the Condo Owners had prepaid all or a significant portion of the purchase price.

[19] The Debtor proposes to use the $550,000 in sale proceeds to pay $257,000 in 2018 property taxes (Claim Nos. 1 and 24), $4,670 for title insurance, estimated closing costs of $34,400 and broker fees of $71,000.  Hr'g Tr. 11/29/18 [ECF No. 99] at 24:16-27:9 (Chong).

(2) creditors cannot make an informed decision on the Motion to Assume without copies of the Contracts or evidence of TMV Condo's use of the sale proceeds;

(3) the Motion to Assume impermissibly seeks to assume forty-three Contracts without complying with Bankruptcy Rule 6006(f)'s omnibus procedures;

(4) the Contracts are not executory and so cannot be rejected because the Debtor has no remaining material obligations; and

(5) assumption of the Contracts is not an exercise of sound business judgment because the Debtor could reject the Contracts and resell the Condominiums at higher prices.[20]

These objections are addressed in turn.

### A. TMV Condo Assigned the Contracts to the Debtor Through the August 3, 2018 Assignment of Contract of Sale.

The Assignment of Contract of Sale entered into evidence at the hearing[21] plainly shows that TMV Condo assigned the forty-three Contracts to the Debtor effective August 3, 2018. Although several objectors complained that the Debtor received nothing in exchange for assuming the Contracts (arguably making the assignment a fraud on its creditors), the evidence established that TMV Condo used nearly $7.75 million it received as the Condo Owners' prepaid purchase price to build the Office Suites and Condominiums on the Debtor's land.[22] The objectors also argue that the entry into the assignment shortly before the bankruptcy filing is a fraudulent conveyance; however, no party in interest has filed a complaint asserting a chapter 5 cause of

---

[20] Mr. Chong believed the Condominiums had appreciated in value by approximately 10-15% since construction was completed. *Id.* at 52:2-22 (Chong).

[21] Debtor's Ex. 53 (Assignment of Contract of Sale).

[22] *Id.*; Hr'g Tr. 11/26/18 [ECF No. 98] at 14:20-16:12, 18:13-18:25, 19:17-20:20, 21:9-18 (Benham); Hr'g Tr. 11/28/19 [ECF No. 99] at 62:13-65:19 (Chong).

action. Too, absent the assignment the Debtor would have paid nothing for the building that now sits on its land.[23] Accordingly, this objection is overruled.

### B. The Record Contains Sufficient Information to Support an Informed Decision on the Motion to Assume.

The Contracts were admitted into evidence at the hearing without objection.[24] Together with them, the record comprises sufficient evidence concerning the circumstances surrounding formation of the Contracts and construction of the Office Suites and Condominiums to permit the court to make a fully informed decision regarding the Motion to Assume. Thus, this objection is overruled.

### C. Failure to Comply Strictly with Fed. R. Bankr. P. 6006(f) is Not Prejudicial to the Debtor's Motion.

The objectors argue that the Motion to Assume must be denied as procedurally improper because it fails to meet the requirements for omnibus objections set forth in Fed. R. Bankr. P. 6006(f). Under Rule 6006(f):

> (f) Omnibus Motions. A motion to reject or, if permitted under subdivision (e), a motion to assume or assign multiple executory contracts or unexpired leases that are not between the same parties shall:
>
> > (1) state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;
> >
> > (2) list parties alphabetically and identify the corresponding contract or lease;
> >
> > (3) specify the terms, including the curing of defaults, for each requested assumption or assignment;
> >
> > (4) specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

---

[23] Hr'g Tr. 11/26/18 [ECF No. 98] at 14:20-16:13, 18:13-25, 19:17-20:20; 21:9-18 (Benham).

[24] Debtor's Exs. 7-49 (Contracts).

(5) be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

(6) be limited to no more than 100 executory contracts or unexpired leases.

The rule was amended in December 2007 to "ensure that the nondebtor parties to the contracts and leases receive effective notice of the motion." FED. R. BANKR. P. 6006 (2007 Advisory Committee Notes).

Nothing in the record suggests that the Debtor's less than scrupulous compliance disserved the objectives of the amended rule. First, the motion involves one type of executory contract, all identified on Exhibit A by unit number and a purchaser's name. Second, the motion is straightforward: it is only five pages long (six pages with Exhibit A) and does not seek a ruling on a myriad of complex agreements contained in an extensive and convoluted motion. On these facts it is doubtful that a Condo Owner was unable to locate its Contract on the exhibit or an objecting party was confused about the objective of the motion. Finally, no party has claimed any confusion regarding the relief the Debtor sought or the Contracts to which the motion referred. Indeed, none of the Condo Owners, the proposed purchasers of forty-two of the forty-three Condominiums, object to assumption.[25]

On this record, strict compliance with Rule 6006(f) is not required and this objection is overruled.

**D.  The Contracts Are Executory and May be Assumed or Rejected.**

Bankruptcy Code § 365(a) permits the Debtor, subject to court approval, to assume or reject executory contracts or unexpired leases to which it is a party. 11 U.S.C. § 365(a). The Bankruptcy Code does not define the term *executory* but the Fifth Circuit holds that a contract is executory if

---

[25]  Although the Condo Owners filed a limited objection to the Motion to Assume [ECF No. 41], they only sought to correct information they felt was incorrect or incomplete. The Condo Owners do not oppose the proposed assumption.

"performance remains due to some extent on both sides" and if "at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party."[26] The issues are whether the Debtor and each Condo Owner owed additional performance under the Contracts on the petition date; and whether one party's failure to perform would constitute a material breach, excusing the counterparty's performance.

Although the Contracts each include unique terms, such as unit number, purchaser name and purchase price, they are largely identical and may be analyzed as a group. The main substantive difference between the Contracts is that some Condo Owners fully prepaid for their Condominiums prepetition, while others did not. Because none of the purchases had closed prepetition, the analysis of treatment of the prepaid and the non-prepaid Contracts differs.

1. **Contracts Where the Purchase Price was Not Fully Prepaid as of the Petition Date are Executory Contracts that May be Assumed or Rejected.**

Contracts where the proposed purchaser had not fully prepaid the purchase price are clearly executory because there are material obligations yet to be performed by each party—namely, the purchaser must pay the remainder of the purchase price, as well as other closing costs allocated to it in the Contract, and the Debtor must deliver title and perform its other closing-related obligations.

SKR attempts to avoid this ruling by arguing in its brief that:

Out of the 43 Contracts, twenty-five (25) [Condo Owners] do not owe any additional sums, one (1) Investor [Condo Owner] owes $50.00, one (1) Investor owes $733.65, ten (10) Investors owe less than $20,000, one (1) Investor owes

---

[26] *RPD Holdings, L.L.C. v. Tech Pharmacy Serv. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 852 (5th Cir. 2018) (citing *Phoenix Explor., Inc. v. Yaquinto (In re Murexco Petroleum*, Inc.), 15 F.3d 60, 62 (5th Cir. 1994) (per curiam)). A contingent obligation of each of the parties, prior to the expiration of the contingency, can be sufficient to render a contract executory when a breach of the obligation would be material. *In re Placid Oil Co.*, 72 B.R. 135, 138 (Bankr. N.D. Tex. 1987) (citing *Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc. (In re Richard Mental Finishers, Inc.)*, 756 F.2d 1043, 1046 (4th Cir. 1985)).

> $23,000, one (1) Investor owes $46,000, one (1) owes $70,000 and one (1) another
> owes $130,000. … Thus, other than a select few, there is nothing for the Investors
> to do and there is nothing for the Debtor to do.

SKR's Post-Hearing Brief [ECF No. 118] ¶ 15. The fact that varying amounts are owed does not change the analysis: a contract remains executory if performance remains due to some extent on both sides and if, at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party. Remaining obligations include the Condo Owner's duty to pay the full purchase price; the Debtor's obligation to deliver a general warranty deed conveying title to the property to the Condo Owner; and for both parties to proceed to closing and pay their respective closing costs.[27] These unperformed obligations render the Contracts executory when the Condo Owners had not prepaid them in full.

### 2. Contracts Where the Purchase Price was Fully Prepaid as of the Petition Date are Executory Contracts that May be Assumed or Rejected.

The analysis is not as straightforward for Contracts where the Condo Owner had paid in full for the Condominium before the bankruptcy commenced. Although the Debtor's obligation to execute and deliver a general warranty deed conveying title to the property is plainly material, whether the Condo Owners who prepaid the purchase price have any unperformed material obligations – thus, rendering the contracts executory, considering the Debtor's unperformed obligation – is disputed.

The objecting parties have two principal objections. First, they allege that 11 U.S.C. § 365 is inapplicable because the Contracts are between two non-debtor parties, the Condo Owners and TMV Condo. But for the reasons set forth above, the Assignment of Contract of Sale operated to

---

[27] Debtor's Exs. 7-49 (Contracts) § 9.B.

assign the Contracts from TMV Condo to the Debtor effective August 3, 2018. Thus, this objection is overruled.

Second, the objectors argue that because the buyers paid the purchase price in full prepetition, they have no remaining material obligations and so the Contracts cannot be executory. In support of this argument, SKR relies on several opinions for the unremarkable proposition that "[i]f the payment of money is the only remaining obligation, such a contract is not executory." SKR's Post-Hearing Brief [ECF No. 118] § 16.[28]

A review of the Contracts shows that, even if the purchase price for a Condominium has been prepaid, the buyer must still:

- Pay for the title policy that will be obtained by the Debtor from Reliant Title. Contract § 6.A.

- Pay for copies of restrictive covenants and documents evidencing exceptions in the commitment for title insurance. *Id.* § 6.B.

- "[O]bject not later than the earlier of: (i) the Closing Date; or (ii) 7 days after buyer receives the Commitment and Exception Documents" or be deemed to have waived its right to object to certain exceptions. *Id.* § 6.C.2.

- "[E]xecute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy." *Id.* § 9.B.3.

- Pay at or prior to closing: one-half the escrow fee, recording fees for the deed and any deed of trust, and fees for copies of easements and restrictions. *Id.* § 12.A.2,c-e.

---

[28] Citing *In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 827 (Bankr. D. Del. 2002) (contract not executory when only remaining obligation is one party's obligation to pay); *In re Cox*, 179 B.R. 495, 498 (Bankr. N.D. Tex. 1995) (same); *In re Placid Oil Co.*, 72 B.R. 135, 138 (Bankr. N.D. Tex. 1987) (same); *see also Pirinate Consulting Grp. LLC v. Avoca Bement Corp. (In re NewPage Corp.)*, 517 B.R. 508, 515 (Bankr. D. Del. 2014) (coal supply agreement without minimum quantity was executory because it still "evidences ongoing, reciprocal obligations for supply and purchase"); *In re MCorp Fin., Inc.*, 122 B.R. 49, 52 (Bankr. S.D. Tex. 1990) ("Even were this obligation [to provide access to an underground tunnel] treated as one applicable on the petition date, the obligation is not so substantial as to render the agreement, which has so much the character of a financing arrangement, an executory contract subject to rejection pursuant to 11 U.S.C. § 365.").

- Pay all homeowner association (HOA) fees and charges related to the transfer, not to exceed $750,[29] and all other deposits for reserves required by the HOA.  *Id.* § 12.A.3-4.

These remaining obligations are not trivial and based upon the Contracts' terms, even if a Condo Owner had prepaid the purchase price as of the petition date, it still had material obligations to the Debtor that are sufficient to render the Contract executory.[30]

For these reasons, the Contracts were executory as of the petition date and so the Debtor may assume or reject them in accordance with 11 U.S.C. § 365.

### E.    Assumption of the Contracts is an Exercise of the Debtor's Sound Business Judgment.

Bankruptcy Code § 365 allows a debtor to assume an executory contract or unexpired lease if (1) outstanding defaults under the contract or lease have been cured under § 365(b)(1) (a provision not applicable here), and (2) the debtor's decision to assume the executory contract or unexpired lease is supported by valid business justifications.[31]  To satisfy the business judgment test, the debtor must show that the proposed course of action will be advantageous to the estate and the decision is based on sound business judgment.[32]  Absent a showing of bad faith or an abuse of business discretion, the debtor's business judgment will not be disturbed.[33]  "'Transposed to the

---

[29]  The amount payable under § 12.A.(3) varies by Contract, with the vast majority falling between $300 and $750. The exceptions are: (1) Units 2005 and 3002 (Debtor's Exs. 11, 17) where the amount was left blank, and (2) Unit 2007 (Debtor's Ex. 13), which states "[a]ll."

[30]  Although not directly on point, cases addressing contracts for deed under Texas law are persuasive.  A contract for deed differs from a conventional contract for sale of real estate in that title remains with the seller until the purchase price is paid in full.  Courts consistently hold that contracts for deed are executory contracts governed by the provisions of § 365(i).  *See In re Hendrickson*, 2005 WL 3670876, at * 2 (Bankr. N.D. Tex. May 24, 2005) ("[A] contract for deed is an executory contract whose rejection is subject to § 365(i)-(j)[.]") (citing *In re Von Keisler*, 166 B.R. 620, 621 (Bankr. N.D. Tex. 1994) (stating that under Texas law, a contract for deed is an executory contract); *In re Finley*, 138 B.R. 181, 182–84 (Bankr. E.D. Tex. 1992) (same); *In re Waldron*, 65 B.R. 169, 173 (Bankr. N.D. Tex. 1986) (same).  Here, as in cases involving contracts for deed, the Condo Owners paid all or a substantial portion of their purchase price but did not receive title prior to the Debtor's bankruptcy.

[31]  *In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009).

[32]  *Id.* (citing cases).

[33]  *NLRB v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984); *Lubrizol Enters.*, 756 F.2d at 1047.

bankruptcy context, the [business judgment] rule as applied to a bankrupt's decision to reject an executory contract because of perceived business advantage requires that the decision be accepted by courts unless it is shown that the bankrupt's decision was one taken in bad faith or in gross abuse of the bankrupt's retained business discretion.'"[34]

The objectors argue that if the Contracts are executory, it is not a sound exercise of the Debtor's business judgment to assume them.  The objectors contend that the Debtor based its decision on Mr. Chong's desire to preserve his reputation within the community and not ultimately to benefit the estate.  *See, e.g.,* SKR's Post-Hearing Brief [ECF No. 118] ¶¶ 18-29.  They insist that sound business judgment dictates rejection of the Contracts and that the Condominiums be resold at higher prices, with the net proceeds paid to creditors in accordance with the priority established by the Bankruptcy Code.  They maintain that action would leave the Condo Owners as holders of general unsecured claims.

The Debtor counters that any benefit the estate might receive from rejecting the Contracts and reselling the Condominiums would be offset by the liens and claims granted to the Condo Owners under 11 U.S.C. § 365(i) and (j).  Accordingly, whether assumption is an exercise of the Debtor's business judgment necessitates a comparison of the two potential outcomes, which involves application of 11 U.S.C. § 365(i) and (j).  A finding that the benefits of rejection materially outweigh those of assumption would support a conclusion that the Debtor proposes assumption in bad faith or that its business judgment is flawed.

Under 11 U.S.C. § 365(i):

(1) If the trustee rejects an executory contract of the debtor for the sale of real property …, under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property or timeshare interest.

---

[34]  *Id*. (quoting *Bildisco*, 682 F.2d at 79).

(2) If such purchaser remains in possession--

> (A) such purchaser shall continue to make all payments due under such contract, but may offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and

> (B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

Bankruptcy Code 365(j) provides that:

> (j) A purchaser that treats an executory contract as terminated under subsection (i) of this section, or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

So, should the Debtor reject contracts for Condominiums "in possession" of a Condo Owner, the Condo Owner may remain in possession and continue to make all payments, with the Debtor being required to deliver title upon payment in full of the purchase price.[35]  On the other hand, if a Condo Owner is not in possession, or decides to treat its Contract as terminated, it is entitled to a lien on the Debtor's interest in the property to the extent of its prepaid purchase price. Both outcomes pose problems for the Debtor.

### 1. Rejecting the Contracts of Condo Owners in Possession Would Not Materially Benefit the Estate or its Creditors.

The objectors argue that a Condo Owner's physical presence in a Condominium does not establish possession under § 365(i) because each Contract provides that the Debtor will not deliver title until "closing and funding."[36]  Because closing has not occurred, "[a]ny possession by Buyer

---

[35]  The exact number and identities of Condo Owners who have moved into their units is not material: no party disputes that at least some of the Condominiums are occupied, the only fact relevant to this Memorandum Opinion.

[36]  Debtor's Exs. 7-49 (Contracts) ¶ 10.

prior to Closing … which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties."[37]   The objectors contend that a tenancy at sufferance is not "possession" for purposes of 11 U.S.C. § 365(i) but cite no bankruptcy precedent to support their argument.  In contrast, the Condo Owners argue that they are "in possession" because they occupy the Condominiums with the Debtor's consent.

Though the parties have not cited, and independent research has not produced, any reported opinions on all fours with these facts, a party's continuous and exclusive occupancy of property is sufficient to establish possession under § 365(i).  As one court explained:

> The legislative history of § 365(i) suggests that "possession" is concerned with buyers whose connection with the land is more permanent than ephemeral, more continuous than intermittent, more exclusive than shared, and more personal than delegable.  *In re Summit Land Co*., 13 B.R. 310, 316–18 (Bankr. D. Utah 1981). *See also In re Silberkraus*, 253 B.R. 890, 907 n.4 (Bankr. C.D. Cal. 2000) (same); *In re Balco Equities Ltd., Inc.*, 323 B.R. 85, 97 (Bankr. S.D.N.Y. 2005) (same). … The legislative history of § 365(i) clearly indicates that the provision was originally enacted because of a concern for "obviating the hardship involved in forcing a purchaser already in possession to leave." *McCannon v. Marston*, 679 F.2d 13, 18 (3d Cir. 1982).  The Legislative History and Comments for § 365(i) state that subsection (i) gives a purchaser of real property under a land installment sales contract protection similar to that § 365(h) provides to lessees.  If the contract is rejected, the purchaser "in possession" may choose to remain in possession or may treat the contract as terminated.  If the purchaser remains in possession, he is required to continue to make the payments due, but may offset damages that occur due to rejection.  The Debtor would then be required to deliver title, but is relieved of all other obligations to perform.  H.R. Rep. No. 595, 95th Cong., 1st Sess. 349 (1977); S. Rep. No. 989, 95th Cong., 2nd Sess. 60 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5963, 5787.

*In re Chicago Hudson, LLC*, 345 B.R. 887, 894 (Bankr. N.D. Ill. 2006).

*Summit Land*, cited in *Chicago Hudson*, involved contracts for the use of recreational park land for hunting, fishing and similar activities where the purchasers' use of the property was intermittent, the purchaser was prohibited from making any permanent improvements to the land,

---

[37] *Id.*

use of the land was shared and easements on the land were intentionally nonexclusive. In light of those findings, the court held that the purchasers were not "in possession" as required by § 365(i).[38]

*Balco*, another opinion on which *Chicago Hudson* rested, also involved a contract to purchase raw land. There the purchaser argued it should be considered "in possession" because it maintained insurance on the property and also had the right, among other things, to enter the property and often did so for surveys, tests, inspections and studies. The court relied on *Summit Land* to hold that the purchaser was not "in possession," given the absence of evidence of the purchaser's actions of physical possession, including improvements on the land.[39]

Here, the evidence established that Mr. Chong on the Debtor's behalf consented to the Condo Owners' occupying the Condominiums once the City of Garland issued the Certificate of Occupancy on March 1, 2018.[40] Upon taking possession, every Condo Owner was given a unique security code to access to its Condominium (along with instructions on changing the code); and utility service for the Condominium was transferred to the Condo Owner, who then became liable for payment.[41] Plainly, this case does not involve a purchaser with only intermittent or shared access to a property or a trespasser occupying a premises either secretly or in defiance of the landlord's wishes. Rather the evidence established that the Debtor consented to each occupying Condo Owner's exclusive use and possession of its Condominium.[42] Thus, each Condo Owner occupying a Condominium is "in possession" within the meaning of Bankruptcy Code § 365(i).

---

[38] *Summit Land*, 13 B.R. at 318.

[39] *Balco*, 323 B.R. at 97-98.

[40] Debtor's Ex. 54 (Building Inspection Ticket/Tag); Hr'g Tr. 11/26/18 [ECF No. 98] at 29:7-39:20, 82:25-83:7 (Benham).

[41] Hr'g Tr. 11/26/18 [ECF No. 98] at 30:25-31:6, 82:25-83:30 (Benham).

[42] *Id.* at 82:25-83:30 (Benham). Ms. Benham also testified that, upon taking possession, a Condo Owner "had to sign paperwork that they understood that they were not going to be closing for a while and that they assumed all the responsibilities with the fees and the HOA and such." *Id.* at 83:15-20.

But that does not complete the analysis because it is necessary to determine the effect on the estate of assumption or rejection of Contracts involving Condo Owners in possession.  In the case of assumption, both parties would be required to perform under the Contracts and proceed to closing.  The Debtor would receive approximately $550,000 in sale proceeds.[43]  After paying closing costs, taxes and similar expenses, the senior lienholders would receive approximately $183,000.

In contrast, rejection of the Contracts would entitle each Condo Owner in possession to exercise its rights under § 365(i), including remaining in its unit and paying any outstanding purchase price.  The Debtor would be obligated to deliver title to the purchaser in accordance with the Contract and would be relieved from all other obligations to perform in accordance with § 365(i)(2)(B).  A comparison of the two outcomes shows little material difference to the estate between assumption and rejection of the Contracts involving Condo Owners in possession.[44]

### 2. Neither the Estate Nor its Creditors Would Materially Benefit from a Rejection of the Contracts for Condominiums Not Currently Occupied by Condo Owners.

A Condo Owner not in possession of a unit (or one in possession who chooses to treat its Contract as rejected) still would be entitled to the protections of § 365(j).  That subsection gives the Condo Owner "a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid."[45]  Courts construing this provision hold that because the lien granted under § 365(j) attaches to "the interest of the debtor

---

[43] Hr'g Tr. 11/28/18 [ECF No. 99] at 24:1-27:17 (Chong).  $550,000 is the approximate aggregate purchase price for all the Condominiums, not just the occupied Condominiums.

[44] If the court approves assumption, the Debtor requests that the sale of each Condominium be free and clear of all liens, claims and interests under 11 U.S.C. § 363.  *See* ECF No. 28.  The Debtor's request to sell will be addressed in a separate memorandum opinion.

[45] 11 U.S.C. § 365(j).

in such property," the lien is subordinate to pre-existing secured creditors.[46] The Condo Owners not in possession also would be entitled to claims for rejection damages.

Tamamoi and SKR prefer that the Debtor reject the Contracts and the subject Condominiums be resold and the proceeds used to pay them as senior lienholders. In that event, each Condo Owner not in possession under § 365(j) would receive a lien subordinated to Tamamoi and SKR's mortgages. The objectors claim this would benefit the estate because the Condominiums have appreciated "maybe ten, fifteen percent,"[47] in Mr. Chong's opinion. But Tamamoi and SKR's arguments assume that the Condominiums could not only be resold for a higher price, but that real estate taxes, broker fees, closing costs, attorneys' fees and similar expenses (including litigation the Condo Owners likely would initiate) would not consume the assumed increase in value. Nothing in the record, however, supports this argument. Instead, the record reflects that the Debtor had to choose between assuming or rejecting the Contracts and reasonably believed that each choice resulted in a similar outcome.

The business judgment standard is highly deferential to the decisions of a debtor in possession, and the record is far from clear that rejection actually would result in an overall benefit to the estate. The possibility that an alternative course of action may result in higher sale proceeds alone will not support a finding that the Debtor's decision to assume was made in bad faith or a gross abuse of its business discretion.

---

[46] *Aetna Bank v. Dvorak*, 176 B.R. 160 (N.D. Ill. 1994); *In re Thompson Designs, Inc.*, 213 B.R. 725, 729 (Bankr. S.D. Ind. 1997) ("As a debtor's interest is subordinate to those of all other secured creditors, it is clear that Congress intended § 365(j) liens to have the very lowest priority of all secured interests in the bankruptcy estate."); *see In re Davis,* 503 B.R. 609 (Bankr. M.D. Pa. 2013) (same); *In re Levitt and Sons, LLC*, 2008 WL 2783154, at * 5 (Bankr. S.D. Fl. July 16, 2008) (same).

[47] Hr'g Tr. 11/29/18 [ECF No. 99] 52:5-22 (Chong).

Accordingly, assumption of the Contracts is an exercise of the Debtor's sound business judgment and the Motion to Assume should be granted.[48]  Because this Memorandum Opinion addressees only the Motion to Assume, a separate Memorandum Opinion will set forth the basis for the court's ruling on the Debtor's request to sell the forty-three Condominiums to the Condo Owners free and clear of liens.

Debtor's counsel is directed to prepare a form of order, circulate it to opposing counsel for review, and upload it within 14 days of entry of this Memorandum Opinion.  If the parties are unable to agree to a form of order, each party shall provide to the Courtroom Deputy its preferred from of order with an explanation of why its proposed form is proper.

### # # # END OF MEMORANDUM OPINION # # #

---

[48]  All objections not addressed in this Memorandum Opinion are overruled.