

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 28, 2019**

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 18-32770-BJH** |
| | § | **(Chapter 11)** |
| **TM VILLAGE, LTD.,** | § | |
| | § | **Related to ECF No. 28** |
| **Debtor.** | § | |

### MEMORANDUM OPINION GRANTING DEBTOR'S MOTION TO SELL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363

TM Village, Ltd. (the "**Debtor**") moved to sell[1] forty-three condominium units pursuant to prepetition sales contracts (the "**Contracts**") the court has authorized it to assume.[2]  Responses to the Motion to Sell were filed by: (1) the majority of counterparties to the Contracts, who refer to themselves as the "**Condo Owners**";[3] (2) senior lienholders Tamamoi, LLC and FDRE, Inc. (together, "**Tamamoi**");[4] (3) Richard Yao, as successor in interest to Yaling Pei, Di Zhang and

---

[1]  Motion to Sell Property Free and Clear of All Liens, Claims and Encumbrances pursuant to 11 U.S.C. § 363 (the "**Motion to Sell**") [ECF No. 28].

[2]  Memorandum Opinion Granting Debtor's Motion to Assume [ECF No. 135].

[3]  ECF No. 41.

[4]  ECF No. 57.

Young Chen ("**Yao**");[5] and (4) second lienholder SKR Partners, LLC ("**SKR**").[6] After an evidentiary hearing, the court requested additional briefing before taking the motion under advisement. This Memorandum Opinion comprises the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable by Fed. R. Bankr. P. 9014(c).

## I.      Jurisdiction and Venue

The court has jurisdiction over the Motion to Sell under 28 U.S.C. § 1334(b); this is a core proceeding under 28 U.S.C. § 157(b)(2)(N).

## II.     Factual and Procedural History

### A.     The Debtor's Corporate Structure and Real Estate

The Debtor, a Texas limited partnership,[7] has a sister company, TMV Condo Office Park, Ltd. ("**TMV Condo**"), another Texas limited partnership. John Chong is the managing member of TMV GP, LLC, the general partner of both entities.[8]

The Debtor owns contiguous parcels of real estate: 1146 W. Trinity Mills Road, Carrollton, Texas ("**TM Village**") and 1220 W. Trinity Mills Road, Carrollton, Texas ("**TM Place**").[9] TM Village is raw land on which the Debtor planned to construct an apartment building.[10] TM Place

---

[5] ECF No. 63.

[6] ECF No. 66.

[7] The Debtor was initially formed on May 15, 2013 as a Texas corporation. Debtor's Ex. 1 (Certificate of Formation). Deb Benham, who manages the Debtor's books and records, testified that the Debtor's formation as a corporation was a mistake; and so it was converted to a limited partnership on October 16, 2014. Hr'g Tr. 11/26/18 [ECF No. 98] at 10:6-16 (Benham); Debtor's Ex. 3 (Certificate of Conversion). She explained why the Warranty Deeds covering the two parcels of real estate (Debtor's Exs. 4 and 5) erroneously identified the purchaser as "TM Village LTD, a Texas *Limited Liability Company,*" when TMV Village LTD actually was a corporation at the time of the purchase. Ms. Benham credibly testified that the Debtor owned the two parcels of real estate at all times relevant to this Memorandum Opinion. Hr'g Tr. 11/26/18 [ECF No. 98] at 10:6-11:10, 12:18-13:10 (Benham).

[8] Debtor's Ex. 2 (Certificate of Formation); Hr'g Tr. 11/26/18 [ECF 98] at 5:5-16, 11:11-22 (Benham); Debtor's Ex. 76 (Certificate of Formation).

[9] Debtor's Exs. 4 (Warranty Deed, TM Village), 5 (Warranty Deed, TM Place); Hr'g Tr. 11/26/18 [ECF 98] at 10:17-24, 12:18-13:7 (Benham).

[10] Hr'g Tr. 11/26/18 [ECF No. 98] at 10:17-24 (Benham).

**Memorandum Opinion**                                                                                            **2**

is the site of a single building divided into commercial office suites (the "**Office Suites**") and residential condominiums (the "**Condominiums**").[11]

###   B.    Construction of the TM Place Office Suites and Condominiums

The record reflects that the Debtor's record keeping was disorganized: indeed, Mr. Chong often was unaware the specific entity that owned a given asset.  According to Ms. Benham,[12] although the Debtor purchased both parcels of real estate, Mr. Chong intended that (1) TMV Condo own the TM Place land (where the Office Suites and Condominiums were built), and (2) the Debtor own the TM Village land (where the apartment building was to be built).  However, the Debtor never transferred the TM Place land to TMV Condo.[13]

Mr. Chong and his entities, oblivious to the Debtor's failure to transfer the land, constructed the building assuming that TMV Condo owned the property.[14]  As a result, TMV Condo,[15] and *not* the Debtor, entered into the Contracts that are the subject of the motion.[16]  Chong had planned to correct the mistake at the closing of each Condominium sale, by having TMV Condo assign each Contract to the Debtor and then having the Debtor proceed to closing.[17]  He instead opted to make the assignment sooner given the prospect of the Debtor's bankruptcy filing.[18]  Thus, on August 3, 2018, TMV Condo and the Debtor executed an Assignment of Contract of Sale,[19] assigning the

---

[11]  *Id.* at 27:6-13 (Benham).

[12]  Ms. Benham handles most of the Debtor's day-to-day administrative functions.  *Id.* at 4:2-20 (Benham).  She has been employed by the Debtor since its formation.  *Id.* at 3:17-20 (Benham).

[13]  *Id.* at 5:23-6:22 (Benham).

[14]  *Id.* at 13:16-14:19 (Benham).

[15]  Although many of the Contracts list the seller as "TMV Office & Condo Park," Ms. Benham credibly testified that the seller was actually TMV Condo.  *Id.* at 23:2-24:18 (Benham).

[16]  *Id.* at 21:23-22:13. (Benham).  Mr. Chong was not the only inattentive player: Ms. Benham, whom Chong had tasked with administering the various projects, also did not realize the mistake until nearly all the Contracts had been signed.

[17]  *Id.* at 22:14-23:1 (Benham).

[18]  *Id.* at 26:8-27:13 (Benham); Debtor's Ex. 53 (Assignment of Contract of Sale).

[19]  Debtor's Ex. 53 (Assignment of Contract of Sale).

forty-three Contracts to the Debtor. The Debtor filed chapter 11 on August 22, 2018, before it and the Condo Owners could close on the respective Condominium sales.

The court previously granted the Debtor's motion to assume the forty-three Contracts.[20] This Memorandum Opinion addresses the Debtor's motion to sell the Condominiums free and clear of liens, claims and encumbrances. After deducting from the sales proceeds closing costs, taxes and similar expenses, the Debtor expects to net about $183,000,[21] an amount the secured lenders argue is grossly inadequate.

## III. Legal Analysis

### A. Sale Free and Clear

Bankruptcy Code § 363(b) permits the Debtor, after notice and hearing, to sell the Condominiums outside the ordinary course of business.[22] Section 365(f) limits the circumstances in which the sale may be free and clear of the interests of third parties, including mortgage and lienholders, to situations where:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[23]

---

[20] ECF Nos. 27 (Motion to Assume) and 135 (Memorandum Opinion).

[21] The Contracts will generate approximately $550,000.00 in gross sale proceeds. Debtor's Ex. 6; Hr'g Tr. 11/28/18 [ECF No. 98] at 16:5-10, 27:21-28:7 (Benham); Hr'g Tr. 11/29/18 [ECF No. 99] at 24:13-15 (Chong). The Debtor proposes to use the proceeds to pay $257,000 in 2018 property taxes (Claim Nos. 1 and 24), $4,670 for title policies the Debtor is responsible for under the Contracts, estimated closing costs of $34,400 and broker fees of $71,000. Hr'g Tr. 11/29/18 [ECF No. 99] at 24:16-27:9 (Chong).

[22] 11 U.S.C. § 363(b).

[23] *Id.* § 363(f).

Moreover, under § 363(e):

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

The issues then are (1) whether the Condominiums may be sold free and clear of all liens, claims and encumbrances, and (2) if so, whether the Debtor must (and is able to) provide adequate protection of those interests. The entity asserting an interest in property has the burden of proof of proof on the issue of the validity, priority or extent of such interest; the Debtor has the burden of proof on the issue of adequate protection.[24]

The parties asserting liens against or interests in the TM Place real property are: (1) plaintiffs in a pending state court litigation that filed a lis pendens against the TM Place real property, (2) multiple creditors holding mechanic's and materialman's liens against the TM Place real property, and (3) the Debtor's mortgage lenders, Tamamoi and SKR. These issues relating to the claims of parties are addressed in turn.

### 1. The Lis Pendens

The Debtor relies on different subparts of § 363(f) in support of the Motion to Sell. With respect to the lis pendens, the Debtor relies on §363(f)(3), alleging the lis pendens are an improper cloud on title. The Debtor's argument is best understood as a claim that the lis pendens are subject to bona fide dispute under § 363(f)(4), not that the sales price is greater than aggregate liens under § 363(f)(3). Thus, the issue is whether the lis pendens are an interest in bona fide dispute under § 363(f)(4) so as to permit the Debtor to sell the Condominiums free and clear of them.

---

[24] *Id.* § 363(p).

In Texas, a notice of lis pendens indicates the pendency of a civil action that pertains to the title of real property, the establishment of an interest in real property or enforcement of an encumbrance against real property.[25] "Generally speaking, the purpose of lis pendens notice is twofold: (1) to protect the filing party's alleged rights to the property that is in dispute in the lawsuit and (2) to put those interested in the property on notice of the lawsuit."[26] A properly filed lis pendens is not itself a lien: instead it operates as constructive notice that prevents a purchaser for value from acquiring property free and clear of the encumbrance referenced in the lis pendens.[27] Tex. Prop. Code § 12.007(a) provides the sole and exclusive legal basis for the filing of a lis pendens, stating in relevant part that:

> [D]uring the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property, a party to the action who is seeking affirmative relief may file for record with the county clerk of each county where a part of the property is located a notice that the action is pending.

Thus, to satisfy §12.007, the suit on which the lis pendens is based must claim a direct interest in real property rather than a collateral interest.[28] In other words, the property against which the lis pendens is filed must be the subject matter of the underlying lawsuit. If the suit seeks a property interest only to secure the recovery of damages or other relief that the plaintiff may be awarded, the interest is merely collateral and will not support a lis pendens.[29]

---

[25] TEX. PROP. CODE § 12.007(a).

[26] *David Powers Homes, Inc. v. M.L. Rendleman Co., Inc.*, 355 S.W.3d 327, 336 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *World Sav. Bank, F.S.B. v. Gantt*, 246 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Countrywide Home Loans, Inc. v. Howard*, 240 S.W.3d 1, 4 (Tex. App.—Austin 2007, pet. denied)).

[27] *See Collins v. Tex Mall, L.P.,* 297 S.W.3d 409, 418 (Tex. App.—Fort Worth 2009, no pet.) ("The doctrine of lis pendens does not void a conveyance of the property during pendency of the suit; the interest of the grantor merely passes subject to it.").

[28] *In re Collins,* 172 S.W.3d 287, 293 (Tex. App.—Fort Worth 2005, no pet.).

[29] *Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995).

### i. The Viewtech, Inc. Lis Pendens

Viewtech, Inc. sued the Debtor and others on April 2, 2018, in the 193rd Judicial District Court of Dallas County, Texas, commencing Cause No. DC-18-04298.[30] It filed a Notice of Lis Pendens with the Dallas County Clerk's Office four days later.[31] But a few months after that Viewtech filed a Notice of Nonsuit as to TMV and the state court dismissed its claims against the Debtor.[32]

The Debtor is no longer a party to the Viewtech lawsuit and no claim supports the Viewtech lis pendens. Considering that as well as Viewtech's failure to object to the Motion to Sell, Viewtech has no interest that is entitled to adequate protection under 11 U.S.C. § 365(e) and the Debtor may sell the Condominiums free and clear of its alleged interest.

### ii. The Yao Lis Pendens

Yao filed suit in the 298th Judicial District Court of Dallas County, Texas on December 30, 2016, commencing Cause No. DC-16-16547 (the "**Yao Lawsuit**").[33] Yao amended the petition several times, eventually joining the Debtor and TMV Condo as defendants.[34] Counsel for Yao filed a lis pendens against the TM Place property on February 15, 2017, but the lawsuit has not concluded with a judgment.

Because the Yao Lawsuit was pending when the Debtor filed for bankruptcy, the plaintiffs' claims remain subject to a bona fide dispute and the Condominiums may be sold free and clear of those claims in accordance with 11 U.S.C. § 363(f)(4).

---

[30] Debtor's Ex. 65 (Original Petition).

[31] Debtor's Ex. 66 (April 6, 2018 Notice of Lis Pendens).

[32] Debtor's Ex. 67 (September 10, 2018 Notice of Non-Suit as to TMV).

[33] Debtor's Ex. 58 (Original Petition).

[34] The record contains various iterations of Yao's petition filed in Cause No. 16-16547. *See* Debtor's Exs. 58 (Original Petition filed December 30, 2016); Debtor's Ex. 59 and Yao Ex. A (First Amended Petition filed February 2, 2017); Debtor's Exs. 63 (Second Supplemental Petition filed April 27, 2017) and 64 (Third Supplemental Petition filed October 19, 2017). The court has based its ruling on the Third Supplemental Petition, the most recent petition in the record.

The remaining issue is whether 11 U.S.C. § 363(e) entitles Yao to adequate protection of the alleged interests. Yao's Third Supplemental Petition makes numerous claims[35] arising from the plaintiffs' alleged investments in a non-debtor entity John Chong controlled—Spring Fund Ltd., which built a condominium project at 1100 W. Trinity Mills Road, Carrolton, Texas. Yao alleges that after Spring Fund Ltd. failed to repay the investments, Chong induced the plaintiffs to roll their investment, along with additional money, into the construction of another condominium project that the Third Supplemental Petition refers to as "TM Place."[36] But the Third Supplemental Petition gives that TM Place's address as 1371 MacArthur Dr., Carrolton, Texas,[37] while the Debtor's TM Place real estate is located at 1220 W. Trinity Mills Road, Carrolton, Texas. Nothing in the record links the two properties; so even accepting as true the Third Supplemental Petition's allegations, the Yao Lawsuit does not involve the TM Place property at 1220 W. Trinity Mills Road and plainly does not meet the requirements of Tex. Prop. Code § 12.007(a).

Alternatively, even if the 1371 MacArthur Drive property were somehow related to TM Place, the Yao Lawsuit petition still fails to allege sufficient facts to satisfy Tex. Prop. Code § 12.007(a), which mandates that the lawsuit involve: (1) title to the real estate, (2) the establishment of an interest in the real estate, or (3) the enforcement of an encumbrance against the real estate. The Third Supplemental Petition does not suggest that the Yao plaintiffs are

---

[35] Debtor's Ex. 64 (Third Supplemental Petition) at 2-5. The Third Supplemental Petition alleges claims for: (1) fraud and fraud in the inducement; (2) negligent misrepresentation; (3) money had and received; (4) civil conspiracy; (5) breach of fiduciary duty; (6) constructive trust, disgorgement and restitution; (7) violations of the Texas Securities Act; (8) violations of the Deceptive Trade Practices Act; and (9) breach of a post-suit settlement agreement. The petition also includes a request for an auditor, a jury demand, and a request for attorneys' fees. *Id.* at 5-11.

[36] Debtor's Ex. 64 (Third Supplemental Petition) at 2-5. According to the petition, Chong approached the Yao plaintiffs when construction of the Trinity Mills condominiums was nearly complete, proposing that they assign back to Spring Fund their interests in eighteen condominiums they were to receive in return for their investment. Spring Fund would then use the money to fund the TM Place project at 1371 MacArthur Drive. *Id.* at 3.

[37] Debtor's Ex. 64 (Third Supplemental Petition) at 3 ("In December, 2014, Defendant Chong started to plan the development of TMV Office Park, another condominium regime and office complex project located at 1371 MacArthur Dr., Carrolton, Texas, 75006.").

seeking any of these three remedies; rather it alleges that they seek monetary damages arising from their alleged investments, and a constructive trust in real estate to satisfy any judgment they receive. Even the latter isn't sufficient to satisfy the statute.

As the Texas Court of Appeals explained:

In actions seeking the imposition of a constructive trust on real property, the question whether an interest sought is collateral or direct is often a close one. Typically, in a conversion suit, the claimant alleges that the proceeds of the converted property were used to purchase real estate and then seeks a constructive trust on that real property. In these cases, the courts have found that imposing a constructive trust on the real estate to satisfy the judgment against the adversary is asserting only a collateral interest in the real property and that a lis pendens is improper. *Id.* [*Flores*, 915 S.W.2d at 478]; *In re Wolf*, 65 S.W.3d 804, 806 (Tex. App.-Beaumont 2002, orig. proceeding). In contrast, where the constructive trust is sought to restore to the aggrieved party the actual property that was misappropriated, the action is seeking to establish an interest in the property itself, so that a lis pendens is appropriate. *First Nat'l Petroleum Corp. v. Lloyd*, 908 S.W.2d 23, 25 (Tex. App.-Houston [1st Dist.] 1995, no writ).

*Countrywide Home Loans, Inc. v. Howard*, 240 S.W.3d 1, 6 (Tex. App. – Austin 2007, pet. denied).

Here, much like parties in *Howard* and the cases it cites,[38] the Yao plaintiffs alleges that they were deceived into investing funds that were allegedly used for, among other things, the construction of TM Place. Those allegations are insufficient to render their lis pendens proper, so the Yao plaintiffs have failed to meet their burden to establish that they have an interest in the TM Place real estate.

In summary, the Debtor may sell the Condominiums free and clear of the Yao lis pendens in accordance with 11 U.S.C. § 363(f)(4); and need not provide adequate protection to the Yao

---

[38] *Flores*, 915 S.W.2d at 478 (holding notice of lis pendens was improper because "plaintiffs seek a constructive trust … only to satisfy the judgment they seek against" the defendant, which "is no more than a collateral interest in the property"); *Moss*, 722 S.W.2d at 763 (holding that plaintiff's "pleading that a lien be imposed against the ... property is essentially a prayer for a judgment lien, affects the property only collaterally, and does not come within the provisions of § 12.007" because plaintiff "does not seek recovery to the title to relator's property nor to establish an interest in the home except as security for the recovery of any damages he may be awarded" against defendant). *See also In re Watts*, 2003 WL 204879, at *1 (Tex. App.—Houston [1st Dist.] Jan. 30, 2003) (mem. op.) (holding that "notice of lis pendens was improperly filed" because plaintiff sought constructive trust in real property only to satisfy a money judgment against the defendant and distinguishing facts from cases in which plaintiff claims an interest in property).

plaintiffs, who have failed to prove they hold an interest in the TM Place real estate entitled to adequate protection under 11 U.S.C. § 363(e).

The Debtor also seeks an order expunging the Yao lis pendens. Because Fed. R. Bankr. P. 7001(2) requires an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property," the Debtor's request to expunge the lis pendens by motion is improper and is denied.

## 2. The M&M Lienholders

Several entities (collectively, the "**M&M Lienholders**") have filed mechanic's and materialmen's liens against the Debtor's real estate:

- On April 13, 2018, Schindler Elevator Corporation filed an Affidavit for Mechanic's and Materialman's Lien of $109,406 for "elevator/escalator equipment, installation services and related materials."[39] According to Ms. Benham, Schindler has received payments since April 13, 2018 and currently holds a claim for approximately $70,000 for work performed on the building located on the TM Place property. [40]

- On June 15, 2018, SK Electric, Inc. filed an Affidavit for Mechanic's and Materialman's Lien of $264,119.43 for "labor and materials to improve the real property generally known as the TM Place construction."[41] According to Ms. Benham, SK Electric worked on the electrical system for the building located on the TM Place property, and the Debtor owes the full amount SK Electric claimed.[42]

- On July 17, 2018, Richard Carrell, Inc. d/b/a Carrell Partners & Yost Architecture filed an Affidavit Claiming a Statutory and Constitutional Lien of $61,661.10 for "architectural services" provided "in connection with a construction project referred to as the Trinity Mills Village Apartments."[43] Ms. Benham testified that the firm prepared the architectural drawings for the apartments to be built on the TM Village property.[44] Although she believes that the firm has received some payments since filing its lien, she did now know the amount of those payments.[45] This

---

[39] Debtor's Ex. 68.

[40] Hr'g Tr. 11/26/18 [ECF No. 98] at 40:24-42:10 (Benham).

[41] Debtor's Ex. 69.

[42] Hr'g Tr. 11/26/18 [ECF No. 98] at 42:11-43:15 (Benham).

[43] Debtor's Ex. 70.

[44] Hr'g Tr. 11/26/18 [ECF No. 98] at 43:16-44:12 (Benham).

[45] *Id.* at 43:13-16 (Benham).

Memorandum Opinion will assume that the firm is owed the amount stated in its Affidavit.

- On August 8, 2018, Basharkhah Engineering, Inc. filed an Affidavit Claiming Statutory and Constitutional Lien of $56,000 for work described as "engineering services" provided "in connection with a construction project referred to as the Trinity Mills Village Apartments."[46] Ms. Benham's testimony did not address the amount owing to Basharkhah so this Memorandum Opinion will assume that the firm is owed the amount stated in its Affidavit.[47]

- On September 10, 2018, Listo, Inc. d/b/a Reliable Concrete filed an Affidavit Claiming Mechanic's and Materialman's Lien of $226,440.77 for concrete work performed on the TM Place real estate.[48] According to Ms. Benham, the full amount claimed remains owing; however, the Debtor intends to object to the secured status of the claim due to Listo's untimely filing of its lien Affidavit in the public record.[49]

  Under the Texas Property Code, a creditor is entitled to a statutory mechanic's and materialman's lien if "the person labors, specially fabricates the material, or furnishes the labor or materials under or by virtue of a contract with the owner or the owner's agent."[50] To perfect a lien, the claimant must "file an affidavit with the county clerk of the county in which the property is located ... not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues."[51]

  Listo's Affidavit alleges that it performed services for the Debtor from March through December 2016. However, the affidavit was not filed of record until September 10, 2018, well after the statutory deadline. Thus, the record supports a finding that Listo does not hold an interest in the Debtor's property requiring adequate protection under 11 U.S.C. § 363(e), and the court reserves for later determination through a formal claim objection a ruling on the priority of the claim.

In summary, $334,119.43 in mechanic's and materialman's liens were filed against the TM Place real property including the Condominiums, and $117,661.10 against the TM Village real property. The next issue is adequate protection.

---

[46] Debtor's Ex. 71.

[47] Hr'g Tr. 11/26/18 [ECF No. 98] at 44:17-45:14 (Benham).

[48] Debtor's Ex. 73.

[49] Hr'g Tr. 11/26/18 [ECF No. 98] at 45:15-46:6 (Benham).

[50] TEX. PROP. CODE § 53.021(a).

[51] TEX. PROP. CODE § 53.021(a). Indebtedness accrues in accordance with Tex. Prop. Code § 53.053, but there is nothing in Listo's affidavit indicating that the indebtedness accrued within a period that would make its Affidavit timely under the statute.

No M&M Lienholder objected to the Motion to Sell, no doubt because the Debtor in the motion sought permission to pay their liens in full at closing.[52] But payment of the M&M Lienholders' claims is improper because SKR holds a prior-perfected lien[53] and is entitled to payment of net sale proceeds before any M&M Lienholder receives payment on a lien claim.[54] Nonetheless, 11 U.S.C. § 363(f) allows the Debtor to sell the Condominiums free and clear of the M&M Lienholders' claims against the TM Place property, which total $334,119.43,[55] though the liens must be adequately protected in accordance with 11 U.S.C. § 363(e), discussed below.

### 3. Tamamoi and SKR

The Debtor has two mortgage lenders – Tamamoi and SKR. Tamamoi claims a first lien against both TM Place and TM Village pursuant to a March 2, 2018 Deed of Trust recorded in the deed records of Dallas County, Texas on March 12, 2018.[56] At the petition date, Tamamoi's claim was between $2.865 million and $3 million.[57] SKR holds a second lien against the TM Place[58] property pursuant to an April 25, 2017 Deed of Trust recorded in the deed records of Dallas County, Texas on May 10, 2017.[59] As of the petition date, SKR was owed approximately $530,000.[60]

---

[52] Motion to Sell ¶ 29.

[53] *Compare* Debtor's Ex. 56 (Deed of Trust, SKR, filed May 10, 2017) *with* Debtor's Exs. 68 (Affidavit, Schindler Elevator, filed April 13, 2018), 69 (Affidavit, SK Electric, filed June 15, 2018), 70 (Affidavit, Carrell Partners & Yost, filed July 17, 2018), 71 (Affidavit, Basharkhah, filed August 8, 2018) and 73 (Affidavit, Listo, filed September 10, 2018).

[54] This Memorandum Opinion does not address the priority of payment between SKR and Tamamoi under the Subordination Agreement, Debtor's Ex. 57, which is an issue between two non-debtor parties.

[55] $70,000 + $264,119.43 = $334,119.43.

[56] Debtor's Ex. 55 (Deed of Trust).

[57] Claim No. 10-1 (alleging $3 million claim); Schedule D [ECF No. 47] at 6 (Part 1, Section 27) (scheduling $2,865,000 claim).

[58] SKR's lien is subordinate to Tamamoi's. Debtor's Ex. 57 (Addendum to Deed of Trust; Subordination of Deed of Trust).

[59] Debtor's Ex. 56 (Deed of Trust).

[60] Claim No. 5-1; Schedule D [ECF No. 47] at 5 (Part 1, Section 26).

The Debtor relies on 11 U.S.C. § 363(f)(5) to argue that it can sell the Condominiums free and clear of these liens because the lenders could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their interests.[61]  The secured lenders do not object on § 363(f) grounds, but instead complain that the sale is not an exercise of the Debtor's business judgment because:

(1) the Debtor is not a party to the Contracts and, if the Contracts were assigned from TMV Condo to the Debtor, the Assignment of Contract is voidable as a fraudulent transfer;

(2) the record contains insufficient information to allow creditors to make an informed decision, and specifically has no evidence of the current value of the Condominium;

(3) selling the Condominiums will trigger the due on sale clause in Tamamoi's Deed of Trust and the sale proceeds are insufficient to pay its lien in full; and

(4) the Condominiums could be resold for a higher price.   These objections are addressed in turn.

### i.    TMV Condo Assigned the Contracts to the Debtor Through the August 3, 2018 Assignment of Contract of Sale.

The Assignment of Contract of Sale[62] plainly shows that TMV Condo assigned the forty-three Contracts to the Debtor effective August 3, 2018.  Although several objectors complained that the Debtor received nothing in exchange for assuming the Contracts (arguably rendering the assignment a fraud on creditors), the evidence established that TMV Condo used nearly $7.75 million it received as the Condo Owners' prepaid purchase price to build the Office Suites and Condominiums on the Debtor's land.[63]  The objectors also argue that the entry into the assignment

---

[61]  Debtor's Post-Hearing Brief [ECF No. 111] ¶ 26. (citing *In re Collins*, 180 B.R. 447 (Bankr. E.D. Va. 1995) ("only one of the enumerated factors must be met")).

[62]  Debtor's Ex. 53 (Assignment of Contract of Sale).

[63]  Hr'g Tr. 11/26/18 [ECF No. 98] at 14:20-16:12, 18:13-18:25, 19:17-20:20, 21:9-18 (Benham); Hr'g Tr. 11/28/19 [ECF No. 99] at 62:13-65:19 (Chong).

shortly before the bankruptcy filing is a fraudulent conveyance; however, no party in interest has filed a complaint asserting a chapter 5 cause of action. Too, absent the assignment the Debtor would have paid nothing for the building that now sits on its land.[64] Thus, this objection is overruled.

### ii. The Record Contains Sufficient Information to Support an Informed Decision on the Motion to Sell.

The Contracts were admitted into evidence at the hearing without objection.[65] Together with them, the record includes sufficient evidence concerning the circumstances surrounding formation of the Contracts and construction of the Office Suites and Condominiums to permit the court to make a fully informed decision regarding the Motion to Assume. Thus, this objection is overruled.

### iii. Sale of the Condominiums Triggers the Due on Sale Clause.

Paragraph 9 of Tamamoi's Deed of Trust[66] states that:

If Grantor [Debtor] shall sell or convey all or any part of the Property [TM Place and TM Village] or any interest therein, Lender may at Lender's options, declare the Note to be immediately due and payable, which option may be exercised at any time following such sale and/or conveyance.

Although neither party briefed this issue or provided any supporting case law, due-on-sale clauses are enforceable in bankruptcy. For example, in *Anthony's Restaurant, Inc.*,[67] the debtor initially sought to sell its property free and clear with the proceeds being used to repay the lender, whose mortgage included a due on sale clause. The debtor later amended its motion and sought to sell the property not free and clear, but subject to the mortgage. Although the lender did not object to a sale free and clear, it argued that a transfer of the property subject to its lien triggered

---

[64] Hr'g Tr. 11/26/18 [ECF No. 98] at 14:20-16:13, 18:13-25, 19:17-20:20, 21:9-18 (Benham).

[65] Debtor's Exs. 7-49 (Contracts).

[66] FDRE Ex. C (Deed of Trust) at 5.

[67] *In re Anthony's Restaurant, Inc.,* 44 B.R. 542 (Bankr. E.D. Pa. 1984).

**Memorandum Opinion** **14**

the due-on-sale clause in the loan documents. In holding the clause enforceable, the *Anthony* court held that:[68]

> [I]n *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court held that property interests in the assets of a debtor's estate should be analyzed and determined according to state law unless Congress or some other identifiable federal interest requires otherwise. In the present case, there is simply no such identifiable federal interest that would require us to treat [lender's] rights pursuant to its mortgage any differently in the bankruptcy context than under Pennsylvania law. In the first place, the debtor has not alleged that the sale would further the debtor's Chapter 11 reorganization. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S. Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Attinello*, 38 B.R. 609 (Bankr. E.D. Pa. 1984). In this regard, we note that the debtor has not filed a plan of reorganization and is selling all of its assets. Secondly, there is no reason to believe that the "fresh start" theory is involved in this matter. The debtor will not receive any proceeds from the sale whether or not its assets are sold under and subject to the mortgage. At most, selling the assets under and subject to the mortgage could benefit the debtor's unsecured creditors. However, there is, of course, no identifiable federal interest in per se benefitting unsecured creditors at the expense of a secured creditor.

Thus, because Texas law recognizes and enforces due on sale clauses,[69] the Tamamoi due-on-sale clause is enforceable in the Debtor's bankruptcy. However, the presence of the clause has no material effect here because it simply gives Tamamoi the option to accelerate a debt that matures on March 2, 2019.[70]

### iv. The Condominiums Cannot Be Resold for Higher Prices.

The objectors complain that the Debtor is not exercising its business judgment because the Condominiums could be resold postpetition, likely for a higher price, and the net proceeds used to pay creditors. A separate Memorandum Opinion granting the Debtor's request to assume the

---

[68] *Id.* at 543.

[69] *Casey v. Men's Assur. Co. of Am.*, 706 F.2d 559 (5th Cir. 1983); *Sonny Arnold, Inc. v. Sentry Sav. Assoc.*, 633 S.W.2d 811 (Tex. 1982).

[70] FDRE Ex. B (Promissory Note).

Contracts pursuant to 11 U.S.C. § 365 rejected this argument.[71]  That same reasoning is adopted here.[72]

### B.    The Sale is a Sound Exercise of the Debtor's Business Judgment.

Bankruptcy Code § 363 allows the Debtor "after notice and a hearing [to] use, sell, or lease, other than in the ordinary course of business, property of the estate."[73]  A debtor must "satisfy [his] fiduciary duty to … creditors and equity holders, [by articulating some] business justification for using, selling, or leasing the property outside the ordinary course of business."[74]  Great judicial deference is given to the debtor's exercise of business judgment.[75]  "'As long as [the sale] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to [sell] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code[.]'"[76]

The Debtor's decision to sell the Condominiums to the Condominium Owners is a sound exercise of the Debtor's business judgment because breaching the assumed obligations by reselling the units now would not necessarily yield the bounty the objecting parties suggest.  Instead, breach of the assumed Contracts would give rise to substantial administrative claims against the estate. Also, the Condo Owners' rights under 11 U.S.C. § 365(i) and (j) to continue to occupy or alternatively hold liens on the units likely would result in protracted litigation over parties' property rights and in any case prevent the Debtor from giving clear title to new purchasers.

---

[71]  ECF No. 135 (Memorandum Opinion).

[72]  *Id.* at 17.

[73]  11 U.S.C. § 363(b)(1).

[74]  *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986).

[75]  *In re Gulf States Steel*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002) (citing *In re Bakalis*, 220 B.R. 525, 531–32 (Bankr. E.D.N.Y. 1998)).

[76]  *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (quoting *Allied Tech., Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982)) (upholding debtor's exercise of business judgment in a decision to assume a lease).

Because the proposed sale of the Condominiums is an exercise of the Debtor's business judgment, the only issue remaining is whether the various lien and interest holders in TM Place can be adequately protected should the sale free and clear be authorized.

### C.    The Secured Lenders' and M&M Lienholders' Interests are Adequately Protected by Liens and Replacement Liens on the Debtor's Remaining Real Estate.

#### 1.    The Post-Closing Value of the Debtor's Real Estate is $4,350,000.

The TM Place property, including both Office Suites and Condominiums, is worth $8,452,000, according to a 2018 tax appraisal,[77] though the Debtor has scheduled the property at $5,713,890.[78]  The only evidence in the record regarding an allocation of value between the Office Suits and the Condominiums is Mr. Chong's uncorroborated testimony that Tamamoi's representative, David Campbell,[79] told him that the Office Suites and land, excluding the Condominiums, are worth approximately $5,000,000.[80]

The 2018 tax appraisal for the TM Village property values the land at $1,242,220[81] but a June 8, 2018 appraisal of the TM Village property assigns a value of $1,450,000, a figure the Debtor's schedules adopt.[82]  Mr. Chong believes that the $1,450,000 appraisal is low because it did not account for architectural and engineering work.[83]   He estimates that the actual value is $2,000,000.

---

[77]  Debtor's Ex. 75.  The 2018 tax statement values the land at $542,740 and the improvements at $8 million.

[78]  Schedule A/B [ECF No. 47] at 7 (Part 9).

[79]  Mr. Campbell is the Chief Executive Office of FDRE, Inc., which acts as servicer for Tamamoi.  Hr'g Tr. 11/28/18 [ECF No. 110] 3:13-18 (Campbell).

[80]  Hr'g Tr. 11/28/18 [ECF No. 99] 10:19-25, 12:4-13:5 (Chong).

[81]  Debtor's Ex. 75.

[82]  Debtor's Ex. 74; Schedule A/B [ECF No. 47] at 7 (Part 9).

[83]  Hr'g Tr. 11/28/18 [ECF No. 99] 19:8-22:18 (Chong).  A Texas property owner may testify to the value of owned property.  *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012).  But the Debtor, and not Mr. Chong, owns TM Place and TM Village.  Nonetheless, his testimony came into the record without objection.

Mr. Chong also testified that, before the November hearing, he received a third party's written purchase offer of about $4,350,000 for the TM Place Office Suites and the TM Village raw land.[84]

Based on this limited record, the $4,350,000 written offer for the TM Village and TM Place properties, excluding the Condominiums, most accurately reflects the value of the Office Suites after the Condominiums are sold.  Of this value, $1,200,000 is allocated to the TM Village property and $3,150,000 is allocated to the TM Place property (excluding the Condominiums).

### 2. The Post-Closing Equity in the Debtor's Real Estate is Sufficient to Adequately Protect all Interests in the Condominiums.

To recapitulate, the TM Village property is valued at $1,200,000 and, post-closing, the TM Place property will be valued at $3,150,000, for a total of $4,350,000.  Tamamoi alleges that its nearly $3,000,000 claim is secured by a senior lien on both TM Place and TM Village; SKR claims that the Debtor's $530,000 debt is secured by a second lien on TM Place; and the M&M Lienholders appear to hold $334,119 in liens against the TM Place property and $117,661 in liens against the TM Village property.

Based on this record, Tamamoi's interests are adequately protected by a combined equity cushion in TM Place and TM Village of between $1,372,338 and $1,555,338.[85]  SKR's and the TM Place M&M Lienholders' interests, however, are currently limited to TM Place, whose post-closing value could be insufficient to secure their liens (depending on the order in which Tamamoi satisfies its first lien against both properties).  Thus, a sale of the Condominiums would adversely affect SKR's and the TM Place M&M Lienholders' respective interests.

---

[84]  Hr'g Tr. 11/28/18 [ECF No. 99] 28:12-29:12 (Chong).

[85]  Calculated as: $1,200,000 (TM Village) + $3,150,000 (TM Place) +  $140,000 (unused tax escrow held by Tamamoi, Hr'g Tr. 11/29/18 at 27:19-28:11 (Chong)) - $3,000,000 (Tamamoi's alleged claim) - $117,661.10 (TM Village M&M Lienholders) = $1,372,338.90, which would increase to $1,555,338.90 if Tamamoi is entitled under the Subordination Agreement to receive the $183,000 in net proceeds payable to SKR due to its prior-perfected lien.

As previously discussed, though, § 363(e) permits the court to condition a proposed sale as necessary to provide adequate protection to lienholders. Although the court has discretion in fashioning adequate protection, § 361(2) specifically contemplates a court's granting additional or replacement liens to the extent a sale would result in a decrease in the value of an entity's lien in the property to be sold. Because the equity cushion in the combined properties is sufficient to adequately protect Tamamoi, SKR and the M&M Lienholders, the court will grant SKR and the TM Place M&M Lienholders replacement liens in the TM Village property as adequate protection of their interests. The replacement liens will be junior to the prior-existing liens, including those held by Tamamoi and the TM Village M&M Lienholders.

### D. Payment of Prepetition Broker Fees

Finally, the Debtor wishes to pay $71,000 of broker fees earned under agreements that were fully performed as of the petition date. Because the brokers' claims for fees are prepetition general unsecured claims against the estate they are not entitled to payment before secured lenders. No party raised the issue previously so the court will give the Debtor an opportunity file a request to pay the brokers from the sale proceeds. In the meantime, the Debtor must hold broker fees pending further order of the court.

Debtor's counsel is directed to prepare a form of order, circulate it to opposing counsel for review, and upload it within 14 days of entry of this Memorandum Opinion. If the parties are unable to agree to a form of order, each party shall provide to the Courtroom Deputy its preferred from of order with an explanation of why its proposed form is proper.

### # # # END OF MEMORANDUM OPINION # # #