

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____

**Signed February 28, 2019**            **United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 18-32770-BJH** |
| | § | **(Chapter 11)** |
| **TM VILLAGE, LTD.,** | § | |
| | § | **Related to ECF Nos. 37 & 51** |
| **Debtor.** | § | |

### MEMORANDUM OPINION (I) GRANTING DEBTOR'S MOTION TO REJECT SETTLEMENT AGREEMENT, AND (II) DENYING CREDITOR'S <u>MOTION TO LIFT THE AUTOMATIC STAY</u>

Debtor TM Village, Ltd. brings another dispute from the mare's nest of problems surrounding its construction of a mixed-use real estate project in Carrolton, Texas. This time the debtor has moved to reject a prepetition settlement agreement pursuant to 11 U.S.C. § 365 (the "**Motion to Reject**").[1] Richard Yao, as successor of interest to Yaling Pei, Di Zhang and Young Chen ("**Yao**"), counterparties to the settlement, have sought relief from the automatic stay under

---

[1] This opinion addresses issues raised in: (1) ECF Nos. 51 (Motion to Reject), 88 (Yao's objection), 117 (Yao's post-hearing brief), 122 (Debtor's post-hearing brief) and 126 (Yao's post-hearing reply brief), and (2) ECF Nos. 37 (Motion to Lift Stay), 46 (Debtor's objection), 53 (Affidavit in support), 54 (objection filed by prospective condominium owners) and 55 (Affidavit in opposition). Parties' filings relating to the automatic stay that raised issues relating to the Motion to Reject also were considered in connection with the ruling, and vice versa.

11 U.S.C. § 362(d) (the "**Motion to Lift Stay**") to pursue its enforcement. This Memorandum Opinion comprises the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable by Fed. R. Bankr. P. 9014(c).

## I.   Jurisdiction and Venue

The court has jurisdiction over the motions under 28 U.S.C. § 1334(b); this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

## II.   Legal Analysis

The parties' prepetition Compromise and Settlement Agreement and Release (the "**Settlement Agreement**")[2] anticipated resolution of Yao's lawsuit against the Debtor and others in the 298th Judicial District, Dallas County, Texas, Cause No. DC-16-16547 (the "**State Court Lawsuit**").[3]

The issues for decision are: (1) whether the prepetition Settlement Agreement is an executory contract and, if so, whether rejecting the Settlement Agreement is an appropriate exercise of the debtor's business judgment, and (2) alternatively, should the court lift the automatic stay to permit Yao to enforce the Settlement Agreement.

### A.   The Motion to Reject

Bankruptcy Code § 365(a) permits the Debtor, subject to court approval, to assume or reject executory contracts or unexpired leases to which it is a party.[4] Although the Bankruptcy Code does not define *executory,* the courts have explained the term. The Fifth Circuit holds that a contract is executory if "performance remains due to some extent on both sides" and if "at the time

---

[2]  Yao Ex. B.

[3]  The parties consented to entry of an agreed interim order on the motion for relief from the automatic stay after a preliminary hearing, with the final hearing scheduled to coincide with the evidentiary hearing on the Motion to Reject. ECF No. 78.  After additional briefing the court took the motions under advisement.

[4]  11 U.S.C. § 365(a).

of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party."[5] The Debtor filed chapter 11 on August 22, 2018 (the "**Petition Date**"), so whether the Settlement Agreement was executory depends on its status that day.

The Settlement Agreement imposes several material obligations:[6]

1. Settlement Amount/Agreed Judgment

The Parties agree that Defendants [including the Debtor] will pay to Plaintiffs the amount of $4,250,000.00 (the "Settlement Amount") on the following terms and conditions:

a) Defendants shall complete the construction of the condominium units located at TM Condo Office Park, Ltd. in a good and workman like manner on or before July 31, 2017. Upon the completion of the condominium units, Defendants shall transfer, free and clear of all liens, the seven remaining unsold units to Plaintiffs [Yao], such unsold units designated as Units 2009, 2010, 2011, 2012, 3009, 3010 and 3011 (the "Condominium Units"), see property descriptions as attached in Exhibit "A". The Condominium Units shall be appraised by a certified SRA or MAI appraiser, agreed upon by counsel for the parties, and the appraised value shall be credited in full against the Settlement Amount upon transfer of the Condominium Units to Plaintiffs or cash payment of such value by Defendants to Plaintiffs. Such transfer or payment shall occur within five days after the completion of the appraisal.

b) After crediting the appraised value of the Condominium Units against the Settlement Amount, the remaining balance shall be entered in an Agreed Judgment against all Defendants, jointly and severally, on a fraud claim (the "Agreed Judgment"). The Agreed Judgment will be held *in trust* by Plaintiffs' counsel and will not be submitted to the Court for signing and entry until July 1, 2018, provided the balance of the Settlement Amount has not been paid in full by June 30, 2018. In the event the full balance of the Settlement Amount has been paid in full by June 30, 2018, the Lawsuit shall be dismissed with prejudice as to all claims and all parties.

---

[5] *RPD Holdings, L.L.C. v. Tech Pharmacy Serv. (In re Provider Meds, L.L.C.)*, 907 F.3d 845, 852 (5th Cir. 2018) (citing *Phoenix Explor., Inc. v. Yaquinto (In re Murexco Petroleum*, Inc.), 15 F.3d 60, 62 (5th Cir. 1994) (per curiam)). A contingent obligation of each of the parties, prior to the expiration of the contingency, can be sufficient to render a contract executory when a breach of the obligation would be material. *In re Placid Oil Co.*, 72 B.R. 135, 138 (Bankr. N.D. Tex. 1987) (citing *Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc. (In re Richard Mental Finishers, Inc.)*, 756 F.2d 1043, 1046 (4th Cir. 1985)).

[6] Yao Ex. B (Settlebjnt Agreement) ¶¶ 1-2, 12 (emphasis in original).

**Memorandum Opinion**　　　　　　　　　　　　　　　　　　　　　　　　　　　　3

2. Lawsuit/Lis Pendens

a) The Parties shall cancel all hearings, depositions and depositions on written questions presently scheduled and pending in the Lawsuit, and all discovery deadlines currently imposed by the Texas rules of Civil Procedure or deadlines imposed by other Texas statutes shall be abated. The parties shall file an Agreed Motion for Continuance re-setting the trial in this matter to a date after September 1, 2018.

b) Plaintiffs, by and through their counsel, shall execute a Release of Lis Pendens in the form attached hereto as Exhibit "B" fully and completely releasing the Notice of Lis Pendens filed by Plaintiffs in Dallas County, Texas regarding the Lawsuit, at the time this Agreement is executed. Defendants shall execute a Special Warranty Deed in the form attached hereto as Exhibit "C" at the time this Agreement is executed, to be held in trust by Plaintiff's counsel until the transfer of the Condominium Units or payment of cash as set forth herein above.

c) Defendants, by and through their counsel, shall execute the agreed judgment in the form attached hereto as Exhibit "D", regarding the Lawsuit, at the time this Agreement is executed.

***

12. Additional Documents or Actions

All parties agree to cooperate fully and to execute any and all supplementary or additional documents and to take any additional action which may be necessary to give full force and effect to the basic terms and conditions of this Agreement.

The Debtor argues that the Settlement Agreement is executory because both it and Yao had material obligations that remained unperformed on the Petition Date. Those obligations included: (1) an accurate appraisal of each Condominium Unit, (2) Yao's release of a lis pendens, (3) the Debtor's conveyance of the Condominium Units to Yao free and clear and (4) the Debtor's payment of the Settlement Amount.[7]

Yao disagrees that the Settlement Agreement was executory on the Petition Date. He contends that the Condominium Units had been appraised, his counsel had released the lis pendens and the Debtor had conveyed title to the Condominium Units, all before the Petition Date, leaving

---

[7] Motion to Reject [ECF No. 51] § 8.

it without any unperformed material obligations. Yao claims that on the Petition Date only the Debtor had an unperformed obligation – to pay Yao the Settlement Amount – which, standing alone, did not render the contract executory.[8]

### 1. The Required Appraisals Were Completed Prepetition in June 2017.

Though the Debtor claims that the units were not appraised prepetition as the agreement required, the evidence in the record demonstrates otherwise.

The Settlement Agreement requires only appraisals performed "by a certified SRA or MAI appraiser, agreed upon by counsel for the parties."[9] By a November 27, 2017 email Debtor's counsel accepted Yao's counsel's suggestion to use Corwin Haney of Dallas Realty Resources as the appraiser.[10] Mr. Haney completed his Appraisal of Real Property as of June 14, 2018.[11] The Debtor does not dispute that Mr. Haney appraised the Condominium Units; however, it alleges that the appraisals were inaccurate, apparently arguing that they were not really appraisals at all.[12]

Texas law provides guidance to courts construing contracting parties' intent.[13] As the district court for the Northern District of Texas has explained,[14]

> When construing a contract, a court's primary concern is to "ascertain the true intentions of the parties as expressed in the instrument." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). Terms will be given their "plain, ordinary, and generally accepted meanings unless the contract itself shows them to

---

[8] Yao's Post-Hearing Brief [ECF No. 117] ¶ 48 (citing cases).

[9] Yao Ex. B (Settlement Agreement) ¶ 2(a).

[10] Yao Ex. M (email chain) ("Our clients will agree to utilize Mr. Haney for the appraisals.").

[11] The record includes appraisals for Condominium Units 2009, 2010 and 3009-3011 only, and none for units 2011 and 2012. Yao Ex. E (cover email and appraisals). The Debtor doesn't challenge the adequacy of the appraisals based on the lack of appraisals for units 2011 and 2012.

[12] Motion to Reject [ECF No. 51] at 3 ("an accurate appraisal of the completed Residential Condominiums has not been completed") and 4 ("a proper appraisal of the seven Residential Condominiums has not been completed"); Debtor's Post-Hearing Brief [ECF 112] at 3 ("the appraisal of the units failed to include the utilities provided at the building and must be amended to provide the actual value of the units").

[13] Yao Ex. B (Settlement Agreement) § 11 ("This Agreement shall be construed and interpreted in accordance with the laws of the State of Texas.").

[14] *Giant Eagle Inc. v. Excentus Corp.*, 2014 WL 12531173, at *4 (N.D. Tex. Aug. 2, 2014).

be used in a technical or different sense." *Id.* In order to ascertain the parties' true intentions, the court will consider the entire writing in order to give effect to all of its provisions so that none will be rendered meaningless. *Id.*; *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 63 (Tex. 2014). "The parties' intent is governed by what they said in the [contract], not by what one side or the other alleges they intended to say but did not." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010) (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex. 2006) ("[W]here the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.")). The Court looks to the objective intent of the parties as it is expressed in the contract, and not the parties' "after-the-fact conduct." *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006). Courts will "construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat. Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)). "If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law." *Frost Nat. Bank, 165 S.W.3d at 312*. A contract is ambiguous, by contrast, "if it is susceptible to more than one reasonable interpretation." *Id.*

Construed in accord with these principles, the Settlement Agreement is unambiguous. The Settlement Agreement gives both parties the unqualified right to have their counsel approve an appraiser for the Condominium Units but lacks any provision allowing a party to challenge the agreed-on appraiser's report or to demand a further appraisal if either party was dissatisfied with the agreed appraiser's opinions. Nothing in the Settlement Agreement supports a finding or a conclusion that the parties preserved an option to challenge their agreed appraiser's opinions. The parties easily could have agreed on a method of dealing with dispute but elected not to do so. The Debtor must live with its choice.

Mr. Haney performed the appraisals in June 2018 so this obligation was not outstanding on the Petition Date.

**Memorandum Opinion** 6

## 2. Release of the Duplicate Lis Pendens was a Material Outstanding Obligation as of the Petition Date.

The Debtor also argues that Yao's failure to release a lis pendens is a material obligation outstanding as of the Petition Date. He relies on a Settlement Agreement provision that:[15]

> Plaintiffs, by and through their counsel, shall execute a Release of Lis Pendens in the form attached hereto as Exhibit "B", fully and completing releasing the Notice of Lis Pendens filed by Plaintiff in Dallas County, Texas regarding the Lawsuit[.]

The form Release of Lis Pendens attached as Exhibit B to the Settlement Agreement specifically references the lis pendens "[f]iled on February 13, 2017, as Document ID 201700043496."[16] Yao's counsel executed the form of Release of Lis Pendens attached to the Settlement Agreement on June 20, 2017, and filed it in the public record on June 21, 2017.[17] Yao reasons that in doing so he satisfied his contractual undertaking to the Debtor.

But two identical lis pendens related to the State Court Lawsuit were filed: one dated January 5, 2017 and filed of record on February 13, 2017 at Document No. 20170004396 ("**first lis pendens**"),[18] which was subsequently released, and a second dated January 5, 2017 and filed of record on February 15, 2017 at Document No. 201700045899 ("**second lis pendens**").[19] Although both lis pendens were in the public record when the parties signed the Settlement Agreement, the Debtor only learned of the second lis pendens a year later when it attempted to sell other condominiums from the same development.

Debtor's counsel then contacted Yao's counsel to obtain the release of the second lis pendens, even furnishing draft documents and other information:[20]

---

[15] Yao Ex. B (Settlement Agreement) § 2(b).
[16] *Id.* at Ex. B p. 1.
[17] Debtor's Ex. 8 (Release of Lis Pendens).
[18] Debtor's Ex. 3.
[19] Debtor's Ex. 4.
[20] Debtor's Ex. 18 at 3 (June 13, 2018 at 9:00 a.m. email from Debtor's counsel to Yao's counsel).

**Memorandum Opinion** 7

> I attached herewith a copy of a duplicate Notice of Lis Pendens filed on 2-15-17, an original Release of Lis Pendens for your signature, along with a fed ex [*sic*] label for delivery to Sendera Title Company, which is handling the closing of the sale of the sales of the condominium units. As you can see, it appears that Dallas County filed the Notice of Lis Pendens twice in February, once on 2-13-17 which you already released in June 2017, with the duplicate filing on 2-15-17, for which a release is now required before sales of the condominium units may be closed at the title company.

Yao's counsel later responded:[21]

> This is to confirm releases will be executed to be held by the title company upon receipt of the closing statement, and filed upon recipient [*sic*] and distribution of the funds.

When the title company contacted Yao's counsel regarding the second release, he replied that Yao would release the filing "AFTER we get the closing statements and not before."[22] It is undisputed that second lis pendens was never released.

Though the Settlement Agreement expressly references a release of only the first lis pendens, it is appropriate to construe the parties' agreement to avoid an unreasonable, inequitable and oppressive outcome.[23] That supports a conclusion that Yao had an unqualified duty to release the second lis pendens.

A prepetition email exchange among the parties' respective counsel clearly shows that second lis pendens was a duplicate filing of the previously-released first lis pendens. Specifically, Debtor's counsel's June 13, 2018 email to Yao's counsel describes the second lis pendens as a "duplicate" of the first lis pendens, explaining that "it appears that Dallas County filed the Notice of Lis Pendens twice."[24] Yao's counsel did not respond to the email to challenge the characterization of the second lis pendens as duplicate or the circumstances surrounding its filing.

---

[21] Debtor's Ex. 19 at 3 (email from Yao's counsel to Debtor's counsel dated June 25, 2018 at 1:36 p.m.).

[22] *Id.* at 2 (email from Yao's counsel to Sendera Title dated June 25, 2018 at 2:00 p.m.) (emphasis in original).

[23] *Frost Nat'l. Bank*, 165 S.W.3d at 312; *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

[24] Debtor's Ex. 17 at 2-3 (email exchange dated June 13, 2018 at 9:00 a.m.).

In fact, Yao's bankruptcy counsel confirmed at the hearing that the two lis pendens were unintentional duplicates.[25]

Section 12 of the Settlement Agreement, titled "Additional Documents or Actions," states that:

> All parties agree to cooperate fully and to execute any and all supplementary or additional documents and to take any additional action which may be necessary to give full force and effect to the basic terms and conditions of this Agreement.[26]

Based on this plain and unambiguous language of the Settlement Agreement, the release of the first lis pendens was a condition of the Settlement Agreement. But § 12 also imposed on Yao an obligation to release the second, unintentional duplicate lis pendens. Despite this, when the Debtor asked Yao's counsel to release the second lis pendens to enable the Debtor to closed condominium sales to third-parties, Yao's counsel refused and used the release as leverage.

Yao is too clever by half. He argues that interpreting the Settlement Agreement to require a release of *all* lis pendens when it references only *one* lis pendens impermissibly rewrites the parties' agreement. The evidence established that Yao's filing of a second lis pendens was an unintentional duplicate not associated with a different, distinct obligation. The Settlement Agreement's explicit obligation to release the original document applies equally to the unintended duplicate. Yao's obligation to the Debtor to release the second lis pendens was material and remained unperformed on the Petition Date.

---

[25] "We believe, your honor, that it was an oversight by a paralegal in the office and I'm not sure that anybody knew about it and it certainly was not raised until the title company in mid-2018 sought to get that released." Hr'g Audio Tr. 11/28/19 at 4:31:48 – 4:32:11 (Brouner). This opinion at times cites to the audio recording of the hearing because no party requested a full transcript.

[26] Yao Ex. B (Settlement Agreement) § 12.

### 3. The Debtor Had Not Conveyed Title to the Condominium Units Prepetition Free and Clear of All Liens as the Settlement Agreement Required.

Finally, Yao argues that the Debtor is judicially estopped from contesting its conveyance of title prepetition. Yao contends that the Debtor conveyed the Condominiums Units to him prepetition through the June 19, 2017 Special Warranty Deed.[27] According to Yao, the Debtor admitted in pleadings it filed in the State Court Lawsuit that its delivery of the deed constituted transfer of the properties as a matter of law and cannot now take a different position. Specifically, Yao points to the Debtor's response to Yao's motion for summary judgment in the State Court Lawsuit[28]:

> As part of the Settlement Agreement, Plaintiffs requested, and Defendants agreed, to sign and deliver a Special Warranty Deed conveying the Condominium Units to the Plaintiffs. As a matter of law, the execution and delivery of a deed operates to convey and transfer the referenced property pursuant to the terms of the deed. *Watson v. Tipton*, 274 S.W.3d 791, 799 (Tex. App.—Fort Worth 2008, pet. denied) ("When a grantor transfers property, title to the property vets in the grantee upon execution and delivery of the deed conveying the property.").

The Debtor counters that it made its state court arguments in the alternative; that no evidence supports a finding that the state court relied on its allegations; and that in any event, that Yao agreed to hold the Special Warranty Deed in trust and not release or file it.

The Fifth Circuit has explained judicial estoppel:[29]

> The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding. The aim of the doctrine is to protect the integrity of the judicial process.… In determining whether to apply judicial estoppel, we primarily look for the presence of the following criteria: (1) the party against whom judicial estoppel is sought has asserted a legal position

---

[27] Debtor's Ex. 9 (Special Warranty Deed).

[28] Yao Ex. H (Defendants' Response to Plaintiffs' Traditional Motion for Summary Judgment filed November 22, 2017) ¶ 11; *see also* Yao Ex. I (Defendants' Response to Plaintiffs' Motion for Enforcement of Settlement Agreement filed October 18, 2017) ¶ 17 (same).

[29] *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261-62 (5th Cir. 2012) (internal citations omitted) (internal quotations omitted).

> which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. However, judicial estoppel is not governed by inflexible prerequisites or an exhaustive formula for determining its applicability, and numerous considerations may inform the doctrine's application in specific factual contexts.

Nothing in the evidentiary record supports a finding that the state court relied on the Debtor's arguments for any purpose. Although orders denying both motions in the State Court Lawsuit are in the record, neither includes the court's analysis.[30] The evidence does not support a conclusion that the Debtor is judicially estopped from arguing that it did not transfer the Condominium Units to Yao prepetition.

Turning to the effect of the Special Warranty Deed, the Settlement Agreement states that:[31]

> Defendants shall execute a Special Warranty Deed in the form attached hereto as Exhibit "C" at the time this Agreement is executed, to be held in trust by Plaintiff's [*sic*] counsel until the transfer of the Condominium Units or payment of cash as set forth above.

It also recites that:[32]

> Upon completion of the condominium units, Defendants shall transfer, free and clear of all liens, the seven remaining unsold units to Plaintiffs, such unsold units designated as Units 209, 2010, 2011, 2012, 3009, 3010, and 3011[.]

This straightforward language required Yao's counsel to release the Special Warranty Deed from trust when construction of the Condominium Units was complete. The evidence in the record does not pinpoint the date construction ended and conflicts in some respects. For example, the Special Warranty Deed was filed in the public record on September 14, 2017,[33] though an email among the parties' counsel states that "[t]he units are nearing completion" on November 13, 2017.[34]

---

[30] Yao Exs. K (Order denying Plaintiffs' Motion to Enforce Settlement Agreement) and L (Order Denying Plaintiffs' Motion for Summary Judgment).

[31] Yao Ex. B (Settlement Agreement) § 2(b).

[32] *Id.* § 2(a).

[33] Yao Ex. D (Special Warranty Deed, Doc. No. 20170260204 filed September 14, 2017 at 12:13:07 p.m.).

[34] Yao Ex. M at 2 (email from Debtor's counsel to Yao's counsel dated November 13, 2017 at 1:09 p.m.).

Moreover, the City of Garland did not issue a certificate of occupancy until March 1, 2018.[35] Regardless of the actual date, it is undisputed that construction was completed before the Debtor filed chapter 11.

Title to real property vests in a grantee upon execution and delivery of the deed conveying the property.[36] Whether the grantor intended to deliver the deed and convey the property in accordance with the deed is "determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument."[37] But proof that the deed was recorded creates a presumption, and establishes a prima facie case, of delivery and intent by the grantor to convey the land.[38] A party may rebut the presumption by showing "(1) that the deed was delivered or recorded for a different purpose, (2) that fraud, accident or mistake accompanied the delivery or recording, or (3) that the grantor had no intention of divesting himself of title."[39]

The plain language of the Settlement Agreement shows that the Debtor executed and intended to deliver the Special Warranty Deed to Yao, to be held in trust until construction of the Condominium Units was complete. Although the deed may have been released and filed prematurely, no party disputes that construction was complete before the Petition Date, which would trigger Yao's duty to release and file the Special Warranty Deed prepetition. Further, the Special Warranty Deed was recorded September 14, 2017, establishing a prima facie case of delivery and intent by the Debtor to convey the Condominium Units—a presumption that no evidence in the record rebuts.

---

[35] Hr'g Tr. 11/26/18 [ECF No. 98] at 29:7-39:20, 82:25-83:7 (Benham); *see also* Memorandum Opinion [ECF No. 135] at 15 (finding that the City of Garland issued a Certificate of Occupancy on March 1, 2018).

[36] *Watson v. Tipton*, 274 S.W.3d 791, 799 (Tex. App.—Fort Worth 2008, pet. denied) (citing *Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261–62 (Tex. 1974)).

[37] *Id.* (citing *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.)).

[38] *Id.* (citing *Swenson*, 517 S.W.2d at 261–62; *Troxel*, 201 S.W.3d at 297).

[39] *Id.* (citing *Swenson*, 517 S.W.2d at 262).

**Memorandum Opinion** 12

Accordingly, the evidence supports a finding that the Debtor conveyed title to the Condominium Units to Yao before the Petition Date. But that does not conclude matters because nothing in the record establishes that the Debtor met the second requirement of transfer: that the title be free and clear of all liens. In fact, the official claims register in the case includes numerous substantial claims secured by interests in the real property.[40] Thus, although Yao received title to the Condominium Units prepetition, he did not receive it free and clear of liens. Accordingly, the Debtor's obligation to clear all liens from title remained a material obligation outstanding as of the Petition Date.

### 4. The Debtor Has Not Yet Paid the Settlement Amount.

Finally, it is undisputed that the Debtor has not paid the Settlement Amount.

In summary, the evidence established that the Settlement Agreement remained executory as of the Petition Date due to both sides' material, outstanding obligations.

### B. Rejection of the Settlement Agreement is an Appropriate Exercise of the Debtor's Business Judgment.

The remaining issue is whether the Debtor's proposed rejection of the Settlement Agreement is an exercise of business judgment.

According to the Debtor:[41]

> Rather than transferring the seven (7) [Condominiums Units] to the Plaintiffs pursuant to the Settlement Agreement, the Debtor can sell each of them on the open market and generate in excess of $1.5 Million to share with all of the creditors of the estate. … [A]t best, the Plaintiffs are unsecured creditors of the Debtor and should not benefit above and beyond the other unsecured creditors of the estate. Therefore, the Debtor believes that based on its well-reasoned business judgment, the Court should authorize the Debtor to reject the Settlement Agreement and allow

---

[40] *See also* Memorandum Opinion [ECF No. 136] at 10-12 (finding that several parties hold alleged liens against the Condominium Units, including senior lienholders Tamamoi, LLC and FDRE, Inc., second lienholder SKR Partners, LLC, and numerous mechanic's and materialmen's lien claimants).

[41] Debtor's Post-Hearing Brief [ECF No. 112] ¶ 80

it to sell the seven units which are the subject of the Settlement Agreement and generate the extra funds for its estate.

The Debtor ignores the fact that it conveyed title to the Condominium Units prepetition. It cannot now undo those transfers by rejecting the Settlement Agreement because rejection of an executory contract does not undo a prepetition transfer of title. As the court explained in *In re Bachinski*,[42]

> Courts consistently have held that rejection of an executory contract does not unwind transactions that already have been consummated—or void property rights that already have been obtained—under the contract prior to rejection. *See Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1308 (11th Cir.) ("[T]he rejection of the Agreement ... did not effectively rescind [the agreement] and reverse the executed transfer of the ... copyrights ...."), *cert. denied*, 552 U.S. 1022, 128 S. Ct. 613, 169 L.Ed.2d 393 (2007); *Leasing Serv. Corp. v. First Tenn. Bank Nat'l Ass'n*, 826 F.2d 434, 436–37 (6th Cir. 1987) (holding that security interest created by executory agreement was unaffected by the trustee's rejection of the executory agreement); *In re Peralta Food Corp.*, 2008 WL 190503 at **6–7 (Bankr. S.D. Fla. Jan. 18, 2008) ("Rejection of the Settlement Agreement does not rescind the Agreement or the obligations found therein.... Rejection of the Settlement Agreement will not affect the validity of [the] Final Judgment against the Debtor and Debtor's obligations thereunder. The deposit of the funds into the registry of the court earmarked said funds for the payment obligation owing to [the creditor], and thus create a secured claim on those funds in favor of [the creditor]. Rejection would not entitle the Debtor to the use of those funds." (citation omitted)).

Although rejection of the Settlement Agreement will not undo the Debtor's prepetition transfer of the Condominium Units to Yao, it will relieve the Debtor from all future obligations under the agreement and render Yao's claims arising from rejection of the Settlement Agreement nonpriority unsecured claims.[43]

---

[42] 393 B.R. 522, 544-45 (Bankr. S. D. Oh. 2008). The *Bachinski* debtors argued, among other things, that the chapter 7 trustee's failure to timely assume a prepetition settlement agreement under 11 U.S.C. § 362(d)(1) resulted in the deemed rejection of the agreement and invalidated a prepetition deed conveying real property to the creditors, thereby returning ownership of the property to them. The bankruptcy court rejected the debtor's argument as "flatly wrong." *Id.* at 543.

[43] 11 U.S.C. § 365(g)(1).

The evidence supports the Debtor's decision to reject the Settlement Agreement under highly-deferential business judgment test, *nunc pro tunc* to the Petition Date.[44]

### C. Motion to Lift Stay

Because the Settlement Agreement is an executory contract that the Debtor may reject as an exercise of its business judgment, Yao is not entitled to relief from the automatic stay to enforce the agreement.

Debtor's counsel is directed to prepare a form of order for each motion, circulate them to opposing counsel for review, and upload them within 14 days of entry of this Memorandum Opinion. If the parties are unable to agree to a form of order, each party shall provide to the Courtroom Deputy its preferred from of order with an explanation of why its proposed form is proper.

### # # # END OF MEMORANDUM OPINION # # #

---

[44] Because Yao did not object to the Debtor's request that rejection of the Settlement Agreement, if granted, be effective *nunc pro tunc* to the Petition Date, the court will grant the request.